IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **WONGU ANN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:22-CV-01734-N-BH** |
| | § | |
| **LONE STAR FUND IV (U.S.), L.P.;** | § | |
| **LONE STAR GLOBAL ACQUISITIONS,** | § | |
| **LTD.; and JOHN P. GRAYKEN,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge[1]** |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Based on the relevant filings, evidence, and applicable law, *Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Improper Service*, filed September 23, 2022 (doc. 8), should be **GRANTED IN PART,** and this action should be dismissed for lack of subject-matter jurisdiction**.** The plaintiff's motion for jurisdictional discovery, which is in his response to the motion to dismiss, should be **DENIED**.

## I.      BACKGROUND

Wongu Ann (Plaintiff), a citizen of South Korea, brings this declaratory judgment action against Lone Star Fund IV (U.S.), L.P. (Partnership), its chairman, John P. Grayken (Chairman), and a private equity firm advising it, Lone Star Global Acquisitions, Ltd. (Advisor) (collectively Defendants), based on the 2003 acquisition of a South Korean bank, allegedly in violation of South Korean laws and regulations. (doc. 3 at 1-4.)[2] He contends that Defendants obtained approval for

---

[1] By *Special Order 3-251*, this *pro se* case has been automatically referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the

the acquisition by making fraudulent misrepresentations to South Korean financial regulators that Partnership would become the sole majority shareholder of the bank. (*Id.* at 1-2, 6-7, 10, 13-14.) Instead, it "managed or ran shell nominee investment vehicles in Bermuda" for other investors who provided "funds used to acquire a 51% stake in the bank through LSF-KEB Holdings, SCA," a private limited liability company organized under the laws of Belgium. (*Id.* at 2, 4, 7, 10-12.)

In 2012, Partnership filed a multibillion-dollar arbitration claim in the International Centre for Settlement of Investment Disputes (ICSID), alleging that the South Korean government had violated the Korea-Belgium-Luxembourg Investment Agreement by unreasonably delaying approval to sell Partnership's shares of the bank, pressuring it to sell at a lower price, and imposing unfair taxes on the sale. (*Id.* at 5-6.) Plaintiff claims that Defendants' fraudulent representations bar Partnership from seeking relief under that agreement, and that "recognition and enforcement in South Korea" of any ICSID award will affect South Korean taxpayers, including him, because it will be paid with their tax money. (*Id.* at 3, 8-9.) He seeks a declaratory judgment that Defendants made fraudulent misrepresentations to South Korean regulators to obtain approval to acquire the bank in violation of South Korean law and regulations, so Partnership "was not entitled to submit its alleged dispute to ICSID in the first place." (*Id.* at 8, 15-16.)

Plaintiff alleges that diversity jurisdiction over this action exists because Partnership is a limited partnership "organized and existing under and by the laws of the State of Delaware[] with its principal place of business in Dallas, Texas"; Advisor is a "Dallas-based private equity firm, registered with the U.S. Securities and Exchange Commission"; and Chairman is the founder of

---

page numbers at the bottom of each filing.

Partnership and was "responsible for developing, instituting, managing and coordinating all aspects" of its investment in the bank. (*Id.* at 3-4.)

On September 23, 2022, Defendants moved to dismiss this action for lack of subject matter jurisdiction. (doc. 8.) In support, they filed a declaration by the General Counsel (Counsel) for "Lone Star",[3] which states in its entirety:

1. My name is Rebecca Smith. I am over 18 years of age and am fully competent to make this declaration. The facts stated in this declaration are true and correct and, unless otherwise stated, within my personal knowledge.

2. I am the Senior Managing Director and General Counsel for Lone Star. I make this declaration in support of Defendants' concurrently filed Motion to Dismiss.

3. Defendant [Partnership] is a limited partnership organized under the laws of Delaware. [Its] general partner is Lone Star Partners IV, L.P. [(General Partner).] [General Partner] is an exempted limited partnership organized under the laws of Bermuda. [General Partner's] general partner is Lone Star Management Co. IV, Ltd. [(General Partner's GP).] [General Partner's GP] is a foreign exempted limited company organized under the laws of Bermuda.

4. [Advisor] is a foreign exempted limited company organized under the laws of Bermuda, with its principal place of business in Hamilton, Bermuda.

5. [Chairman] is a citizen of Ireland.

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

(doc. 9 at 4-5.) Plaintiff responded on October 12, 2022, and Defendants replied on October 26, 2022. (docs. 11-13.)

---

[3] The affidavit references several entities which have names that include the term "Lone Star"; it does not identify the specific "Lone Star" entity for which Counsel works. (doc. 9 at 4-5.) Notably, Plaintiff's complaint defines "Lone Star" as including all defendants. (doc. 3 at 1.)

## II.    RULE 12(b)(1)

Defendants move to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. (doc. 8 at 7.)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A motion under Rule 12(b)(1) "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

The district court may dismiss for lack of subject matter jurisdiction based on (1) the

4

complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.* Facial attacks are usually made early in the proceedings. *Id.* "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. Jan. 29, 1998) (citations omitted).

If the defendants support the motion with evidence, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). "To defeat a factual attack, a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citing *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989) (internal quotation marks and footnotes omitted), *aff'd sub nom.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)).

Here, Defendants provide Counsel's sworn declaration. (*See* doc. 9 at 3-4.) The motion

5

therefore presents a factual attack, and no presumption of truth attaches to Plaintiff's factual allegations.[4] He must prove the existence of subject matter jurisdiction by a preponderance of the evidence through his own evidentiary submissions. *See Superior MRI Servs., Inc.*, 778 F.3d at 504.

**A.  Diversity Jurisdiction**

Defendants allege that diversity jurisdiction does not exist.  (*See* doc. 8 at 7.)

Diversity jurisdiction is proper only when there is complete diversity of citizenship between the parties and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs". *See* 28 U.S.C. § 1332(a). "Complete diversity" means that a plaintiff may not share citizenship with any defendant. *Whalen v. Carter*, 954 F.3d 1087, 1094 (5th Cir. 1992).

*1.  Failure to Allege Citizenship*

Defendants first contend that Plaintiff has failed to allege the citizenship of "*any* of the Defendants", warranting dismissal. (doc. 8 at 8) (*emphasis in original*).

A party asserting diversity jurisdiction must "*distinctly* and *affirmatively*" allege the citizenship of the parties. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir.

---

[4] Plaintiff objects to Counsel's declaration as "conclusory" and because she failed to "affirmatively" show that she has personal knowledge of Chairman's citizenship and that she is "competent to testify to this matter", as required by *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987). (doc. 11 at 23-24.) Defendants respond that Plaintiff's "own cited authority" confirms Counsel's declaration "meets all necessary requirements", including that her statements are "within [her] personal knowledge", she is the "Senior Managing Director and General Counsel", and she testified to the places of organization and principal places of business of Partnership and Advisory Firm, as well as Chairman's citizenship. (docs. 9 at 4-5; 13 at 10 n.3.) The Fifth Circuit has held that in resolving a factual attack under Rule 12(b)(1), the district court "has significant authority 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Houston, Texas*, 260 F. Supp. 3d 738, 754-55 (S.D. Tex. May 9, 2017) (citations and internal quotation marks omitted), *aff'd sub nom. Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 734 F. App'x 916 (5th Cir. 2018). Although Counsel's declaration did not identify her duties, her title supports a reasonable inference that she may provide testimony about Defendants' places of organization, principal places of business, partners, and citizenship. *See id.*; *see also DIRECTTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) (finding, in the summary judgment context, that district courts may properly rely on affidavits where the affiants' "personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation in the matters to which they swore").

1988) (emphasis in original) (citing *McGovern v. Am. Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975), and *Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983) (stating that this obligation "cannot be established argumentatively or by mere inference") (citations and internal quotation marks omitted)). The "affirmative jurisdictional allegations" concerning citizenship must be "'clear, distinct, and precise'". *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (citing *Getty Oil Corp.*, 841 F.2d at 1259). "Failure adequately to allege the basis for diversity jurisdiction mandates dismissal." *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991) (citing *Patterson v. Patterson*, 808 F.2d 357, 357 (5th Cir. 1986), and *McGovern*, 511 F.2d at 654).

Here, Plaintiff's complaint alleges that Partnership is a "limited partnership organized and existing under and by the laws of the State of Delaware, with its principal place of business in Dallas, Texas." (doc. 3 at 3.) "The state where a … limited partnership is organized and where it has its principal place of business does not determine its citizenship for the purpose of § 1332", however. *Toney v. Knauf Gips KG,* No. CIV.A. 12-638-JJB, 2012 WL 5923960, at *1 (M.D. La. Oct. 25, 2012), *report and recommendation adopted*, No. CIV.A. 12-638-JJB, 2012 WL 5904320 (M.D. La. Nov. 26, 2012); *see Magnolia Mgmt. Corp. v. Quest Rescue Partners-8, L.P.*, 792 F. Supp. 45, 48 (S.D. Miss. May 4, 1992) ("The state under the laws of which a limited partnership is organized is irrelevant for diversity jurisdiction purposes."); *MSMM Eng'g, LLC v. Carr*, No. CV 21-1412, 2022 WL 1320435, at *3 (E.D. La. May 3, 2022) ("[N]either MSMM's principal place of business nor the state under whose laws it is organized determines its citizenship, so these facts are insufficient to establish the existence of diversity jurisdiction"). "The citizenship of a limited partnership is based upon the citizenship of each of its partners." *Harvey v. Grey Wolf*

7

*Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding that the citizenship of an unincorporated entity or association, such as a partnership, is based upon the citizenship of each of its members)). The complaint does not identify Partnership's partners or allege their citizenship. (doc. 3 at 3.) It therefore fails to sufficiently allege its citizenship. *See Mullins v. TestAmerica, Inc.*, 300 F. App'x 259, 260-61 (5th Cir. 2008) (per curiam) (finding that allegations in a notice of removal identifying defendant simply as "a limited partnership existing under the laws of the State of New York" without mentioning its partners or their respective states of citizenship were "facially insufficient to establish the existence of diversity jurisdiction").

The complaint also alleges that Advisor is a "Dallas-based private equity firm, registered with the U.S. Securities and Exchange Commission", but it makes no allegations regarding its citizenship. (doc. 3 at 3-4.) Likewise, Chairman's position and role in Partnership's investment in the bank are alleged, but not his citizenship. (*Id.* at 3.) Plaintiff's response concedes that he "failed to conduct a thorough pre-suit investigation" into the citizenship of Advisor and Chairman, and that he "believed" based on public information that both were U.S. citizens. (doc. 11 at 7, 20.)

Because Plaintiff has failed to allege the citizenship of each defendant, he has failed to meet his burden to show diversity of citizenship for purposes of jurisdiction over this action. *See Getty Oil Corp.*, 841 F.2d at 1259 (citing *Illinois Cent. Gulf R. Co.*, 706 F.2d at 636 & n.2).

   *2.  Lack of Complete Diversity*

Defendants also contend that Plaintiff cannot meet his burden to establish complete diversity because all parties are foreign citizens. (doc. 8 at 7-8.)

Section 1332 provides that the district courts shall have original jurisdiction of all civil

actions where the amount in controversy is met, and the dispute is between:

> (1) citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a). Complete diversity is lacking where there are foreign parties on both sides of the litigation. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537-38 (5th Cir. 2014) (citing *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1149 (5th Cir. 1985) (holding that diversity jurisdiction may not be invoked under § 1332(a)(2) in a lawsuit between aliens)); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1298 (5th Cir. 1985) (per curiam) (finding that diversity jurisdiction does not exist where aliens are on both sides of the litigation; *see also Columbraria Ltd v. Pimienta*, 110 F. Supp. 2d 542, 546 (S.D. Tex. Aug. 18, 2000) (finding no diversity jurisdiction because there were foreign citizens on both sides but no United States citizen on plaintiff's side, citing the holding in *Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.*, 506 F.2d 757, 757-58 (5th Cir. 1975), that diversity jurisdiction under § 1332(a)(3) exists only in suits between citizens of different states with aliens as additional parties).

Here, it is undisputed that Partnership is a limited partnership organized under the laws of Delaware. (doc. 3 at 3-4; doc. 9 at 4.) As noted, its citizenship is based upon the citizenship of each of its partners. *See Harvey*, 542 F.3d at 1079 (citing *Carden*, 494 U.S. at 195-96). Counsel's declaration states that its general partner, General Partner, "is an exempted limited partnership organized under the laws of Bermuda." (doc. 9 at 4.) Notably, Counsel's declaration does not state

whether Partnership has any partners other than General Partner, identify any other partners, or provide any other information from which their citizenship may be determined. In *Carden*, the Supreme Court "rejected the argument that only general partners, and not limited partners, of limited partnerships should be considered in determining citizenship". *See Magnolia Mgmt. Corp.*, 792 F. Supp. at 48.

Counsel's declaration states that General Partner in turn has a general partner, General Partner's GP, "a foreign exempted limited company organized under the laws of Bermuda." (doc. 9 at 4.) As with Partnership, the declaration also does not state whether General Partner has any partners other than General Partner's GP, identify any other partners, or provide any other information from which their citizenship may be determined. Defendants' reply, however, states that "*one of the partners* of [General Partner]—[General Partner's GP]—is also a foreign exempted limited company organized under Bermuda law." (doc. 13 at 9 (*emphasis added*).) Based on this statement, General Partner has partners other than General Partner's GP whose citizenship must also be considered.[5]

Like limited partnerships, the citizenship of other unincorporated associations or entities is determined by the citizenship of all its members. *See Harvey*, 542 F.3d at 1080. Counsel's declaration does not identify any members of General Partner's GP. Defendants cite *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 582–83 (7th Cir. 2003), for the proposition that

---

[5]"'Although the *Carden* Supreme Court only addressed single-tiered partnerships, lower courts have consistently applied *Carden's* holding to multi-tiered partnerships.'" *Talon Mgmt. Servs., LLC v. Goliath Asset Mgmt., LLC*, No. 2:19-CV-205-Z-BR, 2020 WL 7401287, at *4–5 (N.D. Tex. Oct. 1, 2020) (quoting *Lone Star Fund IV(US) LP v. Lee*, No. 3:09-CV-1614-B, 2010 WL 1790392, at *2 (N.D. Tex. May 5, 2010)), *report and recommendation adopted*, No. 2:19-CV-205-Z, 2020 WL 6689734 (N.D. Tex. Nov. 13, 2020).

"Bermuda limited companies are considered 'equivalent in all legally material respects to a corporation under state law,' and thus are 'citizens' of both their places of organization and their principal places of business." (*See* doc. 8 at 9.) Even assuming, without deciding, that the Seventh Circuit's decision in *Lear Corp.* should be applied here, the declaration does not identify the location of General Partner's GP's principal place of business, as it does with Advisor, which it also describes as a "foreign exempted limited company organized under the laws of Bermuda." (doc. 9 at 4-5.) Nor does it state from where General Partner's GP operates its business. *See Ed & Fred, Inc.*, 506 F.2d at 757-58 (characterizing a limited company "incorporated in and *operat[ing] its business from* Bermuda" as an "alien" for purposes of § 1332(a) (emphasis added)). Defendants have provided evidence showing General Partner's GP is a citizen of Bermuda, although they have not shown that it is only a citizen of that country because they have not identified its other members and their citizenship, its principal place of business, or the location from where it operates its business. They have therefore shown that Partnership is a citizen of Bermuda, although they have not shown that it is only a citizen of that country for those reasons, and because they have not shown whether it has any partners other than General Partner, identified any other partners, or provided any other information from which their citizenship may be determined

Defendants have also established that Advisor and Chairman are foreign parties. Counsel's declaration states that Advisor is a foreign exempted limited company organized under the laws of Bermuda with its principal place of business there, so it is a citizen of Bermuda. The declaration also states that Chairman is a citizen of Ireland.

The only evidence in the record shows that he and Defendants are all foreign parties. Plaintiff has failed to show that diversity jurisdiction exists over this action. *See Vantage Drilling*

*Co.*, 741 F.3d at 537-38.

    *3.  Navarro Framework*

    Citing the "*Navarro* framework", as applied in *Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351 (5th Cir. 2017), Plaintiff argues that Partnership is the "real party" in interest because he sued it "in its own name and it had sufficiently real and substantial control over its [bank] shares," so only its citizenship matters. (*See* doc. at 11 at 8-14.)

    In *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980), the Supreme Court held that "[i]n determining diversity jurisdiction, 'a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'" *Bynane*, 866 F.3d at 356 (quoting *Navarro*, 446 U.S. at 461). *Navarro* addressed whether "the trustees or the trust's beneficial shareholders are the real parties to a controversy when the trustees are named as the parties in a lawsuit." *Id.* In those circumstances, "'a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.'" *Id.* (quoting *Navarro*, 446 U.S. at 464).

    In *Bynane,* the plaintiff argued that under *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378 (2016), which involved a suit against a trust, the district court should have considered the citizenship of the trust's shareholders to determine diversity jurisdiction instead of the trustee's citizenship. *Id.* at 356-59. The Fifth Circuit found that the *Navarro* rule controlled because the defendant had been sued in its capacity as a trustee and was the real party to the controversy, since it had sufficiently real and substantial control over the trust's assets, and the trustee's citizenship was therefore the relevant inquiry for determining jurisdiction. *See id.*

As the Supreme Court explained in *Carden*, *Navarro* considered "whether parties that were undoubted 'citizens' (viz., natural persons) were the real parties to the controversy", not whether an artificial entity other than a corporation could be considered a citizen for purposes of jurisdiction. 494 U.S. at 191. It clarified that although *Navarro* did discuss the characteristics of a state business trust, the discussion was "not at all [] for the purpose of determining whether the trust had attributes making it a 'citizen,' but only for the purpose of establishing that the respondents were 'active trustees whose control over the assets held in their names [was] real and substantial." *Id.* The court expressly stated that *Navarro* "has nothing to do with the [] question" of whether an artificial entity other than a corporation may be treated as a citizen, and it rejected "the argument by analogy that, just as business reality is taken into account for purposes of determining whether a trustee is the real party to the controversy, so also it should be taken into account for purposes of determining whether an artificial entity is a citizen." *Id.* at 191-192.

Unlike *Navarro* and *Bynane*, this case does not involve either a trust or trustee, but a limited partnership. The argument that the Supreme Court rejected in *Carden* is essentially the argument asserted by Plaintiff here. He claims that under *Navarro*, Partnership is the real party in interest because it controls the bank shares, so it should be considered a citizen and only its citizenship matters for purposes of diversity jurisdiction. *Navarro* does not support consideration of business reality to determine whether an artificial entity such as Partnership is a citizen for purposes of diversity jurisdiction. Because it is a limited partnership, not a corporation, Supreme Court precedent dictates that Partnership's citizenship must be determined based on the citizenship of each of its partners. *See Harvey*, 542 F.3d at 1079 (citing *Carden*, 494 U.S. at 195-96).

Plaintiff also argues that in *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853 (5th Cir. 2003),

13

the Fifth Circuit "confirmed that *Navarro* was still the controlling authority" and that courts look to the rights and powers a party possessed to determine whether it is the real party to the controversy. (*See* doc. 11 at 11-12.) At issue in *Corfield* was whether, for purposes of diversity jurisdiction, the citizenship of every underwriter subscribing to a Lloyd's of London insurance policy must be considered when the lead underwriter sued only on its own behalf. 355 F.3d at 857. After considering the organizational structure of Lloyd's of London and the unique characteristics of its typical insurance policies, the Fifth Circuit concluded that because the underwriter was suing only in its individual capacity and was "without question a real and substantial party to the controversy" that could be sued individually, the citizenship of the other non-party underwriters subscribing to the policy was irrelevant. *Id.* at 857-65. In so finding, it specifically noted *Carden*'s holding that the citizenship of every partner in a limited partnership must be considered for diversity purposes, but it found it inapplicable because of Lloyd's structure.  *Id.* at 865-66.

Unlike the structure of Lloyd's, as discussed in *Corfield*, this case involves a limited partnership.  As the Fifth Circuit stated in *Corfield*, *Carden* therefore controls.

### 4.  *Russell Exception*

Plaintiff next contends that *Carden* is distinguishable based on the exception the Supreme Court carved out in *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 482 (1933), for an unincorporated entity in Puerto Rico.  (*See* doc. 11 at 14-15.)  He argues that "where an entity is organized under foreign law," "courts must look to the particulars of the foreign law to determine whether the foreign entity has a sufficient legal personality to be considered for the diversity jurisdiction analysis, regardless of how [it] may be labeled in the foreign jurisdiction." (*Id.* at 15-16.)

In *Russell*, the Supreme Court held that "the entity known as a *sociedad en comandita*,

14

created under the civil law of Puerto Rico, could be treated as a citizen of Puerto Rico for purposes of determining federal-court jurisdiction." *Carden*, 494 U.S. at 189-90. It noted that *Russell* was the "one exception to the admirable consistency of [its] jurisprudence" declining to treat artificial entities other than corporations as "citizens" of the States under whose laws they were created. *Id.* at 187-189.  The Supreme Court "explained *Russell* as a case resolving the distinctive problem 'of fitting an exotic creation of the civil law ... into a federal scheme which knew it not.'"  *Id.* at 190. It reaffirmed that "at least common-law entities (and likely all entities beyond the Puerto Rican *sociedad en comandita*) would be treated for purposes of the diversity statute pursuant to what *Russell* called '[t]he tradition of the common law,' which is 'to treat as legal persons only incorporated groups and to assimilate all others to partnerships."  *Id.*

   *Carden* made clear that the *sociedad en comandita* in *Russell* was the "one exception" to the rule that artificial entities would not be treated as citizens of the States under whose law they were created. It expressly "adhere[d] to [its] oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members', 'the several persons composing such association,' 'each of its members'". 494 U.S. at 195-96 (citations omitted). It reaffirms that because it is a limited partnership, Partnership's citizenship is based on the citizenship of each of its members. *See Harvey*, 542 F.3d at 1079 (citing *Carden*, 494 U.S. at 195-96). Additionally, contrary to Plaintiff's contention, Partnership is not an entity "organized under foreign law", but rather a domestic limited partnership organized under the laws of Delaware. (doc. 11 at 15.) Plaintiff concedes that "[t]he Supreme Court recognized that the *Russell* exception was rare and probably not applicable if the entity were organized under American law." (*Id.*)

   Plaintiff has failed to meet his burden to show the existence of diversity jurisdiction.

B.  **Standing**

Defendants next argue that Plaintiff cannot meet his burden to establish standing to sue under Article III of the United States Constitution, which deprives this Court of subject-matter jurisdiction. (doc. 8 at 9-10.)

"Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Like other jurisdictional requirements, this requirement is "not subject to waiver," *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996), and the Supreme Court "insist[s] on strict compliance" with it, *Raines*, 521 U.S. at 819.

To satisfy the prerequisites of Article III standing, "[the] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements[, and when] a case is at the pleading stage, the plaintiff must 'clearly... allege facts demonstrating' each element." *Id.* (citations omitted); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998) ("The triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."). While "'at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing," *Stallworth v. Bryant*,

936 F.3d 224, 230 (5th Cir. 2019) (quoting *Lujan*, 504 U.S. at 560), "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing," *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990). "[I]f the plaintiff does not carry his burden clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute, then dismissal for lack of standing is appropriate." *Hotze v. Burwell*, 784 F.3d 984, 993 (5th Cir. 2015) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo*, 578 U.S. at 338–39 (citing *Steel Co.*, 523 U.S. at 103). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). A "concrete" injury actually exists, which means it is real and not abstract. *Id.* at 340 (citations omitted). A "particularized" injury "affect[s] the plaintiff in a personal and individual way." *Id.* at 339 (citations omitted).

The Supreme Court has consistently held that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74; *see also Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) ("A generalized grievance is a harm shared in substantially equal measure by all or a large class of citizens.") (citation omitted). "On several occasions, [it] has denied federal taxpayers standing under Article III to object to a particular expenditure of federal funds simply because they

are taxpayers." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 343 (2006). The "animating

principle" for the denial is

> that a federal taxpayer's "interest in the moneys of the Treasury ... is shared with millions of others; is comparatively minute and indeterminable; and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity." … This logic is equally applicable to taxpayer challenges to expenditures that deplete the treasury, and to taxpayer challenges to so-called "tax expenditures," which reduce amounts available to the treasury by granting tax credits or exemptions. In either case, the alleged injury is based on the asserted effect of the allegedly illegal activity on public revenues, to which the taxpayer contributes.

> Standing has been rejected in such cases because the alleged injury is not "concrete and particularized," … but instead a grievance the taxpayer "suffers in some indefinite way in common with people generally[.]"

*Id.* at 343–44 (quoting *Frothingham v. Mellon*, 262 U.S. 447, 486, 487, 488 (1923), and *Lujan*,

504 U.S. at 560).

Here, Plaintiff alleges that an arbitration award in Partnership's favor will affect South

Korean taxpayers, including him, because it will be paid with their tax money. (doc. 3 at 3, 8–9;

doc. 11 at 29.) This is precisely the type of generalized injury that the Supreme Court has found is

not "concrete and particularized", and that a taxpayer suffers with other taxpayers, for purposes of

standing. Plaintiff argues that *DaimlerChrysler Corp.* is inapposite because he is not challenging

governmental action; he is claiming that the South Korean government was defrauded by

Defendants. (doc. 11 at 24–26.) This distinction does not change the analysis, however, because

his "alleged injury is [still] based on the asserted effect of the allegedly illegal activity on public

revenues, to which [he as a] taxpayer contributes." *DaimlerChrysler Corp.,* 547 U.S. at 344; *see*

*Clinton v. Steel Warehouse Co., LLC*, No. 3:22-CV-223 DRL-MGG, 2022 WL 873874, at *2 (N.D.

Ind. Mar. 24, 2022) (holding that taxpayer who alleged injury based on defendants' fraud on the

federal government had failed to allege an injury-in-fact and lacked standing); *Henry v. United States*, No. 22 CV 1091, 2022 WL 18401265, at *2 (N.D. Ill. Mar. 24, 2022) (finding that taxpayer who complained of "a fraud being perpetrated on '2.4 Million Taxpayers'" did not have standing), *on reconsideration in part*, No. 22 CV 01091, 2022 WL 18401267 (N.D. Ill. Apr. 19, 2022), *aff'd*, No. 22-1841, 2023 WL 334784 (7th Cir. Jan. 20, 2023), *reh'g denied*, No. 22-1841, 2023 WL 2050023 (7th Cir. Feb. 16, 2023).

Plaintiff also relies on *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 687, 688 (1973), in which the Supreme Court stated it had "made it clear that standing is not to be denied simply because many people suffer the same injury"; "[t]o deny standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." That case involved an association's challenge to implementation of a new railroad freight rate structure on grounds that it would adversely affect the environment in the Washington, D.C. area, causing harm to its members who used the natural resources in that area. *Id. SCRAP* was not a taxpayer case, and the Supreme Court has noted its "expansive expression of what would suffice for § 702 review under its particular facts has never since been emulated by [the] Court." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Even so, the Supreme Court in *SCRAP* expressly found that the plaintiff had "alleged a specific and perceptible harm that distinguished [its members] from other citizens who had not used the natural resources that were claimed to be affected." 412 U.S. at 689. Here, in contrast, Plaintiff has not alleged any facts that distinguish him from other South Korean taxpayers.

Plaintiff next relies on *Patterson v. Rawlings*, 287 F. Supp. 3d 632, 642 (N.D. Tex. 2018)

(quoting *Ehm v. San Antonio City Council*, 269 F. App'x 375, 377 (5th Cir. 2008) (per curiam) (citations omitted), in which the court stated that "[a] plaintiff [only] meets the 'injury' requirement of municipal taxpayer standing if he shows that 'he pays taxes to the relevant entity' and 'tax revenues are expended on the disputed practice.'". In that case, the court found that taxpayer standing was lacking "because, *at the very least*, plaintiffs have failed to adequately plead that tax money was spent in connection with" the disputed practice. *See id.* at 643 (emphasis added). It did not hold that simply alleging payment of taxes and expenditure of tax revenues was enough to confer standing.

Plaintiff has not satisfied the requirements for Article III standing, and his claims are also subject to dismissal for lack of subject matter jurisdiction on this basis.[6]

### III.    JURISDICTIONAL DISCOVERY

Plaintiff argues that jurisdictional discovery is warranted to establish Partnership's citizenship. (doc. 11 at 16.)

In the Fifth Circuit, the party opposing dismissal and requesting jurisdictional discovery bears the burden of showing its necessity. *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013); *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). It must make a preliminary showing of jurisdiction. *Fielding*, 415 F.3d at 429. A party is "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman v. United States*, 556 F.3d 326,

---

[6] Because Plaintiff has not sufficiently alleged or established complete diversity of citizenship or standing, it is unnecessary to reach Defendants' Rule 12(b)(5) motion to dismiss the fraudulent misrepresentation claim against Chairman for deficient service of process.

341-42 (5th Cir. 2009); *see also In re S. Recycling, L.L.C.*, 982 F.3d 374, 386 (5th Cir. 2020)
(denying a party's request to remand for "further factual development" because "[a] plaintiff
should be ready to present some amount of basic jurisdictional evidence, or at least raise an
inference that further discovery will uncover such evidence, from the outset of litigation"). A
district court has broad discretion regarding whether to allow jurisdictional discovery. *Wyatt v.
Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).

Initially, Plaintiff has not made a preliminary showing of jurisdiction. *Fielding*, 415 F.3d
at 429. His claim that he "believes" that Chairman is domiciled in the United States is insufficient
to show a need for jurisdictional discovery, especially given Counsel's declaration that Chairman
is a citizen of Ireland. *See Edmondson v. Cedar Park Health Sys., L.P.*, No. 1:17-CV-1030-LY,
2018 WL 4677897, at *3–4 (W.D. Tex. June 8, 2018), *report and recommendation adopted*, No.
A:17-CV-1030-LY, 2018 WL 4701812 (W.D. Tex. July 30, 2018) (concluding that the defendant's
affidavit provided the plaintiff the information necessary to evaluate its citizenship, so there was
no genuine dispute and jurisdictional discovery was not otherwise justified). "[T]he imposition of
jurisdictional discovery places an undue and unnecessary burden on the parties when the proponent
of such discovery only supports the request by conjecture, speculation, or suggestion", and
jurisdictional discovery should not be granted "when the party requesting such discovery can only
suggest or speculate that the requested discovery will shed light on or resolve the issues pertaining
to diversity of citizenship." *NL Indus., Inc. v. OneBeacon Am. Ins. Co.*, 435 F. Supp. 2d 558, 566
(N.D. Tex. 2006); *see also Surge Busy Bee Holdings, LLC v. Wiszniewski*, No. 3:19-CV-127-L,
2020 WL 1846781, at *18 (N.D. Tex. Apr. 13, 2020) ("Mere speculation is not sufficient to support
a request for further discovery."); *Catalyst Medium Four, Inc. v. CardShark, LLC*, No. A-14-CA-

1007-SS, 2015 WL 1412591, at *8 (W.D. Tex. Mar. 26, 2015) (finding that the plaintiff's "request for jurisdictional discovery in the hopes it might, with any luck, reveal jurisdiction is a textbook fishing expedition with no basis in the current record or even its own allegations").

As for Partnership, Plaintiff has not "identified with particularity the discovery [he] seeks or articulated how that information would support [his] jurisdiction[al] arguments" against Partnership. *Edmondson*, 2018 WL 4677897, at *3–4; *see also Freeman,* 556 F.3d 326, 341-42. His proffered facts in support of his request for jurisdictional discovery regarding the alleged location of Partnership's decision-makers in the United States do not go to the citizenship of its partners or members. (doc. 11 at 16-18.) Likewise, his proffered facts regarding the ownership of the bank shares do not impact the jurisdictional inquiry because, as discussed, *Navarro* does not apply here. Although he alleges that it is "unclear what the legal personalities or attributes of [Partnership's] affiliates and partners, including [General Partner's GP]", he claims that information is necessary for "determination of diversity jurisdiction under the *Navarro* framework." (*Id.* at 16.)

As noted, Defendants have established that Partnership is a citizen of Bermuda, although they have not shown that it is only a citizen of that country because they state that General Partner has "other partners" in addition to General Partner's GP whose citizenship they have not identified. (*See* doc. 13 at 9.) They have also not established that General Partner is Partnership's only partner or identified any members of General Partner's GP and their citizenship or its principal place of business or place of operation. (*See* doc. 9 at 4.) The *pro se* plaintiff's allegations that "the difficulty encountered by [him] in collecting largely confidential or otherwise publicly unavailable information that is uniquely within the knowledge of Defendants underscores the necessity of

jurisdictional discovery to confirm the diversity of citizenship in this case", (doc. 11 at 18), may be liberally construed as a claim that they have refused to divulge this information or inform him from where it may be obtained, *see NL Indus., Inc.*, 435 F. Supp. 2d at 565–66. Even so, however, he has not shown that he "can develop facts through discovery that would contradict or cast doubt on [his] allegations supporting standing." *Hunter v. Branch Banking & Tr. Co.*, No. 3:12-CV-2437-D, 2012 WL 5845426, at *2 (N.D. Tex. Nov. 19, 2012) (noting that the defendant's challenge to the plaintiff's standing was facial rather than factual). As discussed above, Plaintiff has not established that he has standing to sue, and this is "an incurable defect in the complaint" that also warrants denial of jurisdictional discovery. *See Williamson*, 645 F.2d at 414.

Plaintiff has not shown how additional discovery would produce any facts to withstand dismissal under Rule 12(b)(1), and his request for jurisdictional discovery should be denied.

## IV.    OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Thomas v. Texas*, No. 3:17-CV-0348-N-BH, 2017 WL 11496979, at *2 (N.D. Tex. May 19, 2017). A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See id.* Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint.

23

*Rodriguez*, 66 F.3d at 97. Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has not amended his complaint since he filed his action. Nevertheless, it appears that he has alleged his best case because even if afforded an opportunity to amend, it does not appear that he can cure the jurisdictional defect.

## V.    RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED IN PART**, and all of Plaintiff's claims against them should be **DISMISSED** without prejudice for lack of subject matter jurisdiction.  Plaintiff's motion for jurisdictional discovery should be **DENIED.**

**SO RECOMMENDED** on this 22nd day of August, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

24

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE